<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MIRIAM HAYDEN and AMERICAN MORTGAGE PROTECTION INSURANCE, <br><br> Plaintiffs, <br><br> v. <br><br> HARTFORD LIFE INSURANCE COMPANY and HARTFORD LIFE AND ANNUITY INSURANCE COMPANY, <br><br> Defendants. | Civil Action No. 10-3424 (GEB) <br><br> **MEMORANDUM OPINION** |

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court on Defendants' July 7, 2010 motion to dismiss Plaintiffs' complaint. (Doc. No. 5.) Plaintiffs have opposed the motion and the parties completed briefing on the issue on October 12, 2010. (Doc. Nos. 5-1, 9-3, 11.)[1]

Defendants argue that Plaintiffs cannot allege violations of the New Jersey Law Against Discrimination ("NJLAD") and the New Jersey Conscientious Employee Protection Act ("NJ CEPA") because Plaintiffs' claims are not sufficiently connected with New Jersey to fall within the protection of those statutes. (Defs.' Br. at 16-22; Doc. No. 5-1.) Defendants also argue that the Court must dismiss or stay Plaintiffs' remaining claims because they are subject to an arbitration provision in her Producer Contract. (Defs.' Br. at 23-31.) For the reasons set forth below, this Court denies Defendants' motion to dismiss.

---

[1] Plaintiffs do not dispute that the Court lacks personal jurisdiction over Scott Dumbauld, and thus stipulated to his dismissal. (Doc. No. 10.)

1

**I.      BACKGROUND**

This is an employment discrimination case brought under the NJLAD and NJ CEPA for discrimination based upon gender.  The complaint also alleges several claims that are related to the contracts that govern the alleged employment relationship.  In their motion papers, both parties submit several certifications.  To the extent that these present undisputedly authentic documents, the Court considers those documents; to the extent that they present factual evidence, the Court will not consider them.

**A.      Facts**

*1.      Facts Relevant to Plaintiffs' Right to Avail Themselves of New Jersey's Statutory Employment Protection*

The factual allegations in the complaint together with facts present in indisputably authentic documents are these:

The complaint alleges that Defendants Hartford Life Insurance Company and Hartford Life and Annuity Insurance Company ("Defendants") have a place of business in New Jersey at 50 Millstone Rd. Bld. 300140, East Windsor, New Jersey. (Compl. at ¶1; Doc. No. 1-2.)  The complaint states that Plaintiffs Miriam Hayden and her company American Mortgage Protection Insurance ("AMPI") have a principal place of business at 11 Pal Drive, Ocean, New Jersey. (Compl. at preamble; Doc. No. 1-2.)  However, the undisputedly authentic documents attached to the motion to dismiss provide that while AMPI may have a place of business in New Jersey, AMPI's principal place of business is in Massachusetts.  Both AMPI's New Jersey insurance listing and AMPI's incorporation certificate list its principal place of business as an address in Massachusetts. (Cerra Cert. at Ex. E; Doc. No. 5-2; Cerra Cert. at Exs. C, G; Doc. No. 5-2.)  Thus, while Ms. Hayden may have had her principal employment in New Jersey, AMPI's principal place of business is in Massachusetts.

The complaint further alleges that Plaintiff was employed as a Field Marketing Director for the Defendants. (Compl. at ¶¶3, 6, 10; Doc. No. 1-2.)[2] Ms. Hayden's employment involved hiring General Agents, who oversaw producers who sold insurance policies to clients. (*See* Compl. at Ex. C. at §2; Doc. No. 1-2.) When Plaintiffs were involved in the sale of insurance policies, they were entitled to commissions. (*See* Compl. at Ex. A §5, Ex. C at §4; Doc. No. 1-2.) Under the contract, Defendants were required to pay Plaintiffs the commissions; however, Defendants had the right to charge Plaintiffs for the sales leads that they provided to Plaintiffs. (*See* Compl. at Ex. B; Doc. No. 1-2.)

The dispute between the parties began when Defendants allegedly "began to wrongfully withhold Ms. Hayden's commission . . . withheld lead inventories, unfairly charged lead lift offs for Ms. Hayden's female general agent (Lisa Dalton), and failed to notify Ms. Hayden and Lisa Dalton about the Field Marketing Director and General Agent Convention in San Diego, California." (Compl. at ¶ 10; Doc. No. 1-2.) After this action, Hayden sent several letters complaining about Defendants' treatment to Scott Dumbauld. However, in response to her letters, Defendants denied that they engaged in harassing or gender biased behavior and required Hayden to obtain authorization to purchase leads. (*Id.* at ¶¶13-16.) Defendants ultimately terminated Plaintiffs' employment. (*Id.*)

Plaintiffs allege both gender-based disparate treatment and retaliatory discharge. Plaintiffs allege that Defendants terminated Hayden because she voiced her concerns about Defendants' wrongful conduct. (*Id.* at ¶¶17-24 (alleging a violation of NJ CEPA) and ¶¶30-36 (alleging violation of NJLAD).) Plaintiffs allege that Defendants' disparate treatment of Hayden

---

[2] For the purposes of this motion, Defendants concede that, despite their contract with Plaintiffs that designated an independent contractor relationship, Plaintiffs may allege sufficient facts that the actual relationship was one of employment. (Defs.' Br. at 16 n.11; Doc. No. 5-1.)

3

was due in part to her gender and that it constituted sexual harassment and created a hostile work environment. (*Id.* at ¶¶25-29, 37-50 (alleging a violation of NJLAD).)

        2.     *Facts Relevant to the Arbitration Provisions*

There are three contracts involved in the complaint; one contains an arbitration provision but the other two do not. Two of the contracts formed the basis of the relationship between Plaintiffs and Defendants. The first was the Producer Contract, which has the following broad arbitration clause:

> Any controversy or claim occurring under, relating to or in connection with any provisions of this Contract or the breach of such provisions, unless resolved by mutual agreement of the parties will be finally settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect on the date hereof by a Commercial Arbitration Tribunal appointed with those rules. . . . The place of arbitration will be Minneapolis Minnesota.

(Compl. at Ex. A, §9; Doc. No. 1-2.) A series of subsequent contracts known as the Field Marketing Director Contracts are addendums to this contract, and, because they do not contravene the arbitration provision, the Producer Contract's arbitration provision also requires arbitration of their provisions. (*See* Compl. at Ex. C; Doc. No. 1-2.) The second contract, while related to the Producer Contract, is the Insurance Lead Contract. (Compl. at Ex. B; Doc. No. 1-2.) It governs Plaintiffs' purchase of insurance leads and does not contain an arbitration provision. (Compl. at Ex. B; Doc. No. 1-2.)

A third contract, the Member Contract, governs the Plaintiffs' relationship with its General Agents. (Compl. at Ex. D; Doc. No. 1-2.) The Member Contracts do not contain an arbitration provision and the only parties to that contract are Plaintiffs and the General Agents with whom they contracted. (*See* Compl. at Ex. D; Doc. No. 1-2.) Defendants are not a party to this contract.

### B.    Procedural History

Plaintiffs filed a Complaint against Defendants in the New Jersey Superior Court in Middlesex County on or about June 1, 2010.  (Cerra Cert. at Ex. A; Doc. No. 5-2.)  The Complaint alleged that Defendants engaged in wrongful discrimination under the NJLAD and NJ CEPA and tortious interference with her contracts with her General Agents, breach of contract, and breach of the implied covenant of good faith and fair dealing.  (Compl.; Doc. No. 1-2.)  On July 6, 2010, Defendants removed the action to this Court on Diversity grounds.  (*Id.* at ¶3.)  The next day, they filed this motion to dismiss.  (Doc. No. 5.)

## II.    DISCUSSION

### A.    Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint will survive a motion to dismiss if it contains sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570).  The plausibility standard requires that "the plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).  Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

In evaluating a motion to dismiss, a court may consider only the complaint that contains the claims that are the subject of the motion, exhibits attached to the complaint or answer, matters of public record, and undisputedly authentic documents if the claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

> 2. *Motion for Leave to Amend Pleadings*

Federal Rule of Civil Procedure 15(a)(2) provides that, under the present circumstances, "a party may amend [its] pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The Supreme Court has identified several factors to be considered when applying Rule 15(a):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.– the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981), cert. denied, 455 U.S. 1018 (1982); *Newlin v. Invensys Climate Controls*, Civ. No. 05-5746 (RBK), 2006 U.S. Dist. LEXIS 61133, (D.N.J. August 16, 2006); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204-05

(3d Cir. 2006) (stating that "leave to amend must generally be granted unless equitable considerations render it otherwise unjust.")

Thus, while "Rule 15(a) gives the court extensive discretion to decide whether to grant leave to amend after the time for amendment as of course has passed," CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1486 (2d ed. 1990), Rule 15(a)'s "generous standard is tempered by the necessary power of a district court to manage a case" in light of the factors listed in *Foman*. *See Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 891 (5th Cir. 1987).

**B.  Application**

*1.  Plaintiffs' NJLAD and CEPA claims*

To determine whether to dismiss counts one through four of the complaint, the Court must determine whether Plaintiffs may use the NJLAD or NJ CEPA as a cause of action. The question of whether Plaintiffs may avail themselves of the NJLAD and NJ CEPA is essentially a choice of law question. *Norris v. Harte-Hanks*, *Inc.*, 122 Fed. App. 566 (3d Cir. 2004.) "A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state." *Echols v. Pelullo*, 377 F.3d 272, 275 (3d Cir. 2004). The forum state in this case is New Jersey. New Jersey "applies a flexible 'governmental-interest' standard, which requires application of the law of the state with the greatest interest in resolving the particular issue that is raised in the underlying litigation." *Gantes v. Kason Corp.*, 145 N.J. 478, 679 A.2d 106, 109 (1996).

While this is a flexible standard, a few rules of thumb have emerged. Specifically, "New Jersey Courts have consistently applied the law of the state of employment to claims of workplace discrimination" and therefore apply the NJLAD if the claimant was employed in New

7

Jersey. *Peiken v. Kimmel & Silverman, P.C.*, F. Supp. 2d 654, 657 (D.N.J. 2008). This is because "New Jersey law regulates conduct in New Jersey, not outside the state." *Buccilli v. Timby, Brown & Timby,* 283 N.J. Super. 6, 10, 660 A.2d 1261 (App. Div. 1995). Further, a court may not apply NJLAD and NJ CEPA merely because an employee lives in New Jersey, particularly where the employee "worked exclusively in [another] state and the conduct which she alleges was unlawful occurred there." *Buccilli*, 283 N.J. Super. at 10-11. However, where a corporation's discriminatory conduct occurs in New Jersey, even if the employee is employed elsewhere, New Jersey law applies. *D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J. 516 (1993).

In this case, Plaintiffs' allegations, broadly construed as they must be, sufficiently allege that Hayden's employment was in New Jersey. Plaintiffs allege that Defendants had an office in New Jersey and that Hayden had her primary place of business in a New Jersey office. Thus, Hayden was primarily employed in New Jersey and Defendant has an office in the state. This, if true, is sufficient to create an interest in applying New Jersey law under either *D'Agostino* or *Peiken*.

Plaintiffs do backpedal somewhat from their complaint in the briefing and Defendants submit certifications that tend to show that much of the complaint glosses over negative facts. However, this simply suggests that Defendants should present this argument again at summary judgment after some discovery has taken place and when Defendants can present assertions in their Rule 56.1 statement that Plaintiffs must either admit or deny. The undisputedly accurate documentation does not rebut the allegation of Hayden's employment in New Jersey for the purposes of this motion.

## 2. Arbitration of Counts Five Through Eight[3]

The next issue raised in the motion is whether counts five through eight must be arbitrated. The Court finds that the claims need not be arbitrated because they involve contracts that do not contain arbitration provisions.

When determining whether a claim must be arbitrated, "the focus remains on the facts underlying the claim rather than the actual legal terms in which the claim is covered." *Caruso v. Ravensword Developers, Inc.*, 337 N.J. Super. 499, 507 (App. Div. 2001); *EPIX Holdings Corp. v. Marsh & McLennan Cos.*, 410 N.J. Super. 453, 472-73 (App. Div. 2009). "If these factual allegations touch matters covered by the parties' contract, then those claims must be arbitrated, whatever the legal labels attached to them." *EPIX*, 410 N.J. Super. at 473; *see also Jansen v. Salomon Smith Barney, Inc.*, 342 N.J. Super. 254, 258 (App. Div. 2001) (ordering arbitration because even though "plaintiffs couch their claim as an independent tort action, the complaint essentially sounds in contract.") (citations omitted); *Wasserstein v. Kovath*, 261 N.J. Super. 277, 286 (App. Div. 1991) ("Notwithstanding the language of the Wassersteins' complaint sounding in tort, the complaint essentially arises in contract rather than tort and is governed by the contract.").

The question of whether the factual allegations of the complaint are within the scope of the arbitration agreement is essentially a question of contract interpretation, *Caruso*, 337 N.J. Super. at 505, because "only those issues may be arbitrated which the parties have agreed shall be." *Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 168 N.J. 124, 132 (2001). However, because of a "strong public policy [that] favors arbitration of dispute resolution," there is a presumption that the dispute falls within an arbitration clause. *EPIX*, 410 N.J. Super. at 471

---

[3] The parties both apply New Jersey arbitration law without a discussion of the choice of law issue. Thus, the Court finds that the parties have both submitted to the application of New Jersey law to this dispute.

(internal quotations omitted).  Indeed, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *EPIX*, 410 N.J. Super. at 471 (internal quotations omitted).  Clauses that use broad "arising under" or other similar provisions cover torts related to the contract in addition to contract disputes themselves.  *Alfano v. BDO Seidman, LLP*, 393 N.J. Super. 560, 575 (App. Div. 2007).

The Court denies Plaintiffs motion because each of Plaintiffs' contract-like claims involves a contract that *does not* contain an arbitration clause.   Plaintiffs have not agreed to arbitrate these claims.

While Plaintiffs do not so argue, two of the three contracts that govern this dispute do not have arbitration provisions.  The first of the three contracts is the Producer Contract that has the following broad arbitration clause:

> Any controversy or claim occurring under, relating to or in connection with any provisions of this Contract or the breach of such provisions, unless resolved by mutual agreement of the parties will be finally settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect on the date hereof by a Commercial Arbitration Tribunal appointed with those rules. . . .   The place of arbitration will be Minneapolis Minnesota.

(Compl. at Ex. A, §9; Doc. No. 1-2.)[4]   This is a broad provision that would cover related torts. *See Alfano*, 392 N.J. Super. at 575.  However, the other two contracts do not contain arbitration provisions.  The second contract, while closely related to the Producer Contract, is the Insurance Lead Contract.  It governs the purchase of leads and does not contain an arbitration provision.

---

[4] The Field Marketing Director Contract is an addendum to this contract.  Because it does not contravene the arbitration provision, both "contracts" are really one contract that includes the provision.  (*See* Compl. at Ex. C.; Doc. No. 1-2.)

10

The third contract is the Member Contract between Plaintiffs and their General Agents. (Compl. at ¶¶51-64; Doc. No. 1-2.)  This contract does not contain an arbitration clause and Defendants are not parties to the Member Contracts. (Compl. at Ex. D; Doc. No. 1-2.)

The majority of the allegations involve the Member Contracts and the Insurance Lead Contract, the two contracts without arbitration provisions.  Counts five and six both allege tortious interference with the Member Contracts between Plaintiffs and their General Agents. (*See* Compl. at ¶51-64; Doc. No. 1-2.)  These contracts do not have an arbitration provision. Counts seven and eight allege, at least in part, withholding of leads; i.e. the violation of the Insurance Leads Contract.  (*See* Compl. at ¶¶65-73; Doc. No. 1-2.)  This contract does not contain an arbitration provision either.  The claims, therefore, are not those that the parties have agreed to arbitrate and this Court cannot order such an arbitration.  *Garfinkel*, 168 N.J. at 132. Defendants have cited no authority that suggests that an arbitration clause in one contract can require arbitration of a party's rights in a separate contract; instead, they incorrectly suggest that all of the claims relate exclusively to the Producer Contract.  Thus, these claims need not be arbitrated.

However, part of the allegations of claims seven and eight involve the Producer Contract. *See EPIX*, 410 N.J. Super. at 473.  The breach of the Producer contract involves facts that "occur[] under, relate to" or are "in connection with" the contract.  *See Caruso*, 337 N.J. Super. at 505.  Thus, this portion of the claim is within the scope of the arbitration provision and must be arbitrated.

Plaintiffs' citation of *Garfinkel* is not to the contrary.   While *Garfinkel* did find that an arbitration clause must give a clear waiver of a statutory right, it did so in the context of claims under the NJLAD.  The New Jersey Supreme Court noted that the NJLAD embodied "the clear

11

public policy of this State . . . to abolish discrimination in the work place." *Garfinkel*, 168 N.J. at 130. The court clearly intended its ruling to apply only in the situation presented by the strong public policy before it. The court stated that:

> [T]he policies that support the LAD and the rights it confers on aggrieved employees are essential to eradicating discrimination in the workplace. The court will not assume that employees intend to waive those rights unless their agreements so provide in unambiguous terms.

*Id.* at 135. Thus, it was only in the context of a statutory employment claims that *Garfinkel* requires a clear and explicit waiver of a statutory right. *See Alfano*, 393 N.J. Super. at 576 (finding that *Garfinkel*'s clear waiver requirement applies only in the area of statutory employment claims); *EPIX*, 410 N.J. Super. at 476 (*Garfinkel*'s limits on arbitration clauses "do not apply outside the 'special area' of 'plaintiff's enforcement of statutory employment claims.'").[5]

While this case contains some statutory employment claims, as discussed, claims seven and eight are not statutory employment claims; they are contract and tort claims that arise out the contract. Thus, the presumption of arbitrability applies to these claims and, to the extent that they allege breach of the Producer Contract, the claims must be arbitrated.

Thus, as discussed, portions of claims five through eight survive because the contracts at issue do not contain arbitration clauses. It is only to the extent that these allegations rely on the Producer Contract that Plaintiffs must arbitrate the claims.

---

[5] Further, while *Garfinkel* cursorily found that other claims in a suit involving statutory employment claims should be tried together, it did so based upon considerations of judicial economy. 168 N.J. at 137. While this Court must follow New Jersey law where appropriate, the Court sees no reason that it should be bound by the New Jersey Supreme Court's considerations of judicial economy.

### III. CONCLUSION

Consequently, the Court denies Defendants' motion to dismiss Plaintiffs' complaint because the Complaint sufficiently alleges that she was employed in New Jersey and can avail herself to its laws and because some contracts at issue in the remaining counts do not contain arbitration clauses.

Dated: December 8th, 2010

/s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.